UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALMS RESIDENTS ASSOCIATION, : Case No: 1:17-cv-00605
*et al.*, :
: Judge Timothy Black
Plaintiffs, :
:
**vs.** :
:
UNITED STATES DEPARTMENT OF :
HOUSING AND URBAN :
DEVELOPMENT, *et al.*, :
:
Defendants. :

## ORDER GRANTING THE CITY OF CINCINNATI
## LEAVE TO APPEAR AND FILE BRIEF AS *AMICUS CURIAE*

The City of Cincinnati has moved the Court for leave to file an *amicus curiae* brief in this case and to appear and participate in the Hearing set for October 6, 2017 at 10:00 a.m. (Doc. 10).

The decision whether to grant *amicus curiae* status to a party is a matter left to the sound discretion of the district court. *See United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991) (citing *Northern Sec. Co. v. United States*, 191 U.S. 555 (1903)). *Amicus* status should be granted where the request is "timely, useful, or otherwise necessary to the administration of justice." *Id.* Where the government has "an important interest and a valuable perspective on the issues presented[,]" granting leave to appear as amicus is appropriate. *Bd. of Educ. v. United States Dep't of Educ.*, No. 2:16-CV-524, 2016 U.S. Dist. LEXIS 107614, at *16, 2016 WL 4269080 (S.D. Ohio Aug. 15, 2016) (internal quotations and citation omitted).

The City of Cincinnati (the "City") argues that it has a strong interest in the outcome of this case because it directly impacts its citizens, both the tenants and community-at-large. The City further argues that the subject of this lawsuit, the Alms Hill Apartments (the "Alms"), represents a significant portion of the City's already insufficient affordable housing. The City argues further that Defendant U.S. Department of Housing and Urban Development ("HUD")'s proposed abatement of the affordable housing contract associated with the Alms will increase housing instability for some of the City's most vulnerable residents and exacerbate the affordable housing shortage.

The City also articulates that it has a clear and vested interest in this litigation due to the City's obligation to protect the health and safety of its residents. The City plausibly argues that the Alms' tenants, its neighbors, and the neighborhood at large will be affected by the outcome of this case. The City opines that, if the Alms is closed, the City may have to relocate tenants

who may face homelessness if they are unable to find housing or do not qualify for the tenant protection vouchers HUD may issue. In addition, the City notes that allowing HUD to abate the Alms' contract will directly impact the City's economy because the property will lose value and sit vacant; and the decline in property value from the loss of the federal subsidy will negatively impact the tax revenue received by the City.

Moreover, the City posits that allowing this historic building, considered "home" by hundreds of Cincinnati citizens, to fall vacant will likely harm the surrounding community and threaten the significant efforts to revitalize the surrounding Walnut Hills neighborhood. It is well-established that vacant structures can attract blight and crime. And the City therefore fears that, should HUD be allowed to proceed with its abatement, a vacant Alms will cast a shadow over an in-flux neighborhood struggling to maintain its identity and sustain its most vulnerable residents.

Presumably, this Court's decision will have a major impact on the pending state court litigation filed by the City in 2015 to address substandard living conditions, crime, and building code violations at the Alms. *See City of Cincinnati v. PE Alms Hill Realty, LLC*, Hamilton C.P. No. A1500883. In the state court litigation, the City sought abatement of nuisance conditions at the Alms; a Receiver was appointed by the court and charged with bringing the Alms into code compliance; and the City avers that significant progress has been made towards that end, citing the state court's Order of February 1, 2016. The state court Receiver is partially funded by the rental revenues from the federal subsidy. As the City argues, if HUD abates the Alms' housing contract, this income stream disappears and the likelihood of the nuisance being abated is significantly diminished, if not altogether eliminated.

Moreover, both HUD and Plaintiffs rely upon information provided by the City to support their positions in this matter. *A fortiori*, the City is best-suited to present its information, data, and records, and allowing the City to participate as an *amicus* will ensure that the Court has immediate access to the most up-to-date information directly from the source. Given the significant public interests at stake, the City ought to be permitted to communicate its position to the Court directly.

In sum, the City's request to participate in *amicus* status is "timely, useful, or otherwise necessary to the administration of justice," *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991), and the City has "an important interest and a valuable perspective on the issues presented …." *Bd. of Educ. v. United States Dep't of Educ.*, No. 2:16-CV-524, 2016 U.S. Dist. LEXIS 107614, at *16, 2016 WL 4269080 (S.D. Ohio Aug. 15, 2016).

Accordingly, the Court **GRANTS** the City's Motion (Doc. 10) and the City shall file forthwith its *amicus curiae* brief (Doc. 10, Ex. A) as a separate docket entry. Moreover, the Court grants the City leave to participate in the October 6, 2017 Hearing on Plaintiffs' Motion for a Preliminary Injunction (Doc. 3).

**IT IS SO ORDERED.**

Date:   10/3/17

_Timothy S. Black_
Timothy S. Black
United States District Judge